EVANS, Respondent, vs. THE CHICAGO, ST. PAUL, MINNEAPO-
LIS & OMAHA RAILWAY COMPANY, Appellant.

*November 30 — December 29, 1893.*

*Railroads: Nuisances: Obstruction of street: Action by private person.*

1. An instrument granting to a railroad company the right to construct,
   maintain, and operate its railroad in the street in front of the
   grantor's lot, "as the same was at the date of said instrument con-
   structed," gave the company no right thereafter to destroy the
   street as a public highway in front of said lot.

86  597
87  543
86  597
88  621
86  597
92  483
86  597
96  375

2. The construction and maintenance of a railroad along a street in such a way as to destroy entirely the use of the same as a public highway, is not authorized by statute (R. S. sec. 1828, subd. 5, and sec. 1836).

3. A complaint alleging that a railroad company has wrongfully and unlawfully used and occupied the street opposite plaintiff's lot in such a way as to completely obstruct all travel with teams thereon and to entirely destroy its use as a public highway, and has thereby prevented plaintiff's former customers, and other persons who would otherwise have done business with him at his warehouse and elevator on said lot, from having access to or egress from the same, and has thereby destroyed plaintiff's business and the value of his said premises, shows that plaintiff has suffered such special and peculiar damage as to enable him to maintain an action therefor, both at common law and under sec. 3180, R. S.

APPEAL from the Circuit Court for *St. Croix* County.

It is alleged in the complaint, in effect, that First street in Hudson is sixty feet in width, and runs north and south, and has existed for more than thirty years; that prior to May 17, 1879, the Hudson & River Falls Railway Company constructed, and was then operating, two railway tracks on the westerly side of said street at the place in question; that May 17, 1879, one Elizabeth A. Denniston was the owner in fee simple of lot 1, block B, Willow River, now a part of said city, except five feet off the south side thereof, which lot is situated on the west side of said street and extended to the center thereof, and upon which there was then situated, and for many years prior thereto, a warehouse used and occupied for the purpose of storing and handling grain and other farm products, and that said premises were chiefly valuable for such warehouse purposes; that May 17, 1879, the said Denniston, by an instrument in writing, granted to the said Hudson & River Falls Railway Company the right to construct, maintain, and operate its railroad in, upon, over, and through First street in said Hudson, in front of all of said lot except five feet off from the south side thereof, at any and all points in said street

in front of said lot east of a line drawn parallel with, and twelve feet west of, the center line of said main track of the railway of said company, as the same was at that time constructed; that November 13, 1879, the said Denniston, by a warranty deed duly executed and acknowledged, sold and conveyed to the plaintiff all her right, title, and interest in and to said lot 1, described, and that the said plaintiff then became, and ever since has been, the owner in fee simple of said premises; that in 1881 the said plaintiff constructed an elevator in connection with said warehouse, and thoroughly prepared and fitted up the same for the business of handling grain to be shipped by railway to and from said warehouse, as well as by other means, and devoted nearly all of his entire time to said business, and that said business so conducted by him yielded him a net income of at least $1,500 per annum.

The complaint further alleges that in 1882 the said company consolidated into and became the defendant company, with other railroad companies, and that the defendant has since maintained and operated said line of road so built and constructed, but that the defendant never obtained or acquired any other or further or greater right to maintain its line of railroad over, through, or upon said First street or said lot 1, than those acquired from the Hudson & River Falls Railway Company as aforesaid; that in December, 1887, the defendant erected upon said First street, almost directly opposite to the plaintiff's said lot and warehouse, a passenger and freight station, consisting of one large building, and so located that the most westerly corner thereof extended nearly up to the east line of said street, so that the platform of said station house extended into said street a distance of nearly ten feet; that upon the erection of said station the defendant caused a track to be laid along the easterly side of said street, and convenient to said passenger and freight station, and the same has been regularly

and continuously used and occupied by the defendant for the loading and unloading of passengers and freight, and as a part of the main track of the defendant, and has, ever since such erection and occupation of such station house, occupied the entire width of said street at the point opposite lot 1, and for a long distance both north and south of the same, for the purposes of its railroad business; that since the erection of said depot the defendant has used said street opposite said lot in such a manner as to entirely destroy the use of the same as a public highway, and to entirely prevent the use of the same for the purpose of teams or business of any sort along said street.

It is further alleged that directly south of said lot the defendant has maintained, during all of said time since the erection of said depot, and does now maintain, a high and steep embankment through and along the center of said street, many feet above the natural surface of the same, and along which its said tracks are laid; that no crossing is maintained over or passageway under said embankment of said railroad track at the intersection of the cross street south of the plaintiff's warehouse, and that by reason thereof it has been practically impossible for teams which have been driven to said warehouse to leave the same without being driven for a great distance along the side of said railroad tracks, and by a long and circuitous route back to the business portion of the city; that since the erection of said station the said track nearest to the plaintiff's warehouse has been used as a side track for switching purposes and for the storing of cars and for standing cars for the loading and unloading of freight and for the making up of trains, and has been so used that trains or parts of trains are being almost constantly pushed up and down said side track opposite said warehouse, and for a great portion of the time during each day cars have been left standing upon the track opposite the plaintiff's

premises, at the first crossing north thereof, and which said crossing is the regular or usual way ordinarily used by residents of Hudson and vicinity of reaching plaintiff's premises, and the only practicable route of reaching the same; that, by reason of such obstructions aforesaid, the approaches to said warehouse are, and during all the time since the erection of said station house have been, for many hours each day, totally obstructed, and egress from and ingress to said warehouse by teams, or business of any sort, entirely prevented; that by reason of such use of said side track, and the noise, commotion, and annoyance attendant upon the use of said premises for switching and yard purposes, it is practically impossible to drive teams up to or near said warehouse, without their becoming greatly frightened and excited, and in much danger of becoming uncontrollable, running away, and destroying themselves and other property; that, by reason of the neglect and failure of the defendant to put proper planking between and along said tracks opposite said warehouse, it is impossible for teams and wagons to turn around on said premises, even when said tracks are not obstructed by cars.

The complaint alleges, further, that the use and occupation of said First street and said lot 1 by the defendant in the manner aforesaid, and for any other purpose than the running of its regular trains over and upon the same, was and is wrongful, unlawful, and without permission or authority from the plaintiff or his grantor, and without permission or authority from the city of Hudson; that, by reason of said unlawful and wrongful use and occupation of said First street opposite lot 1, the business of the plaintiff at said warehouse fell off and declined, and soon thereafter was totally destroyed; that by reason thereof the plaintiff was unable to attract or procure any business at said warehouse, and was finally compelled to abandon the said business and said premises for warehouse and elevator

purposes; that the buildings on said lot 1 are of very little value, except for warehouse and elevator purposes; and that because of said wrongful use of said First street the rental value of the same has been totally destroyed, and the premises have been rendered almost entirely valueless for any purpose whatever. Wherefore plaintiff claimed $3,000 damages.

From an order overruling a general demurrer to such complaint the defendant appeals.

*Solon L. Perrin*, for the appellant, contended, *inter alia*, that if, because of the occupancy of the street, carefully and properly or otherwise, by defendant, plaintiff has been embarrassed or inconvenienced, his embarrassment or inconvenience are the same in kind — though perhaps greater in degree — as that suffered by the public and all others living upon and using the street. *Blood v. N. & L. R. Corp.* 2 Gray, 137; *Heiss v. M. & L. W. R. Co.* 69 Wis. 555; *Hanlin v. C. & N. W. R. Co.* 61 id. 515; *Harvard College v. Stearns*, 15 Gray, 1; *Barnum v. M. T. R. Co.* 33 Minn. 365, and cases cited; *Shero v. Carey*, 35 id. 424; *Swanson v. M. & R. R. Boom Co.* 42 id. 535; *Lakkie v. C., St. P., M. & O. R. Co.* 44 id. 438; *Trustees v. M. & L. W. R. Co.* 77 Wis. 158; *Sinnott v. C. & N. W. R. Co.* 81 id. 95, 103. The deed of the common grantor was a conveyance of and release from any and all damage to the property by any railroad use of the street, and plaintiff is estopped thereby from maintaining this action.

For the respondent there was a brief by *Ray S. Reid* and *Baker & Helms*, and oral argument by *Mr. Reid*.

CASSODAY, J. It sufficiently appears from the foregoing statement that since the construction of the depot mentioned the defendant had used the street opposite the plaintiff's lot in such a manner as to completely obstruct all travel with teams thereon, and to entirely destroy the

use of the same as a public highway, and thereby prevented the plaintiff's former customers, and other persons who would otherwise have done business with him at his warehouse and elevator, from having access to or egress from the same, and that by such action the defendant has destroyed the plaintiff's business and rendered his premises of but very little value. If such obstruction was wrongful, unlawful, and without permission or authority from the plaintiff or his grantor or the city of Hudson, as alleged, then it certainly constituted a public nuisance, and subject to be abated as such. Elliott, Roads & S. 477 *et seq.* But, to entitle a private party to maintain an action for such public nuisance at common law, it must appear that he has suffered some special or peculiar damage, differing, not merely in degree, but in kind, from that which is deemed common to all. *Carpenter v. Mann,* 17 Wis. 155; *Zettel v. West Bend,* 79 Wis. 316; *Hay v. Weber,* 79 Wis. 591. But here the complaint alleges such special and peculiar damage, and hence states a good cause of action at common law. *Walker v. Shepardson,* 2 Wis. 384; *Enos v. Hamilton,* 27 Wis. 256; *Pettibone v. Hamilton,* 40 Wis. 402; *Burrows v. Pixley,* 1 Root, 362, 1 Am. Dec. 56; *Stetson v. Faxon,* 19 Pick. 147, 31 Am. Dec. 123; *Iveson v. Moore,* 1 Ld. Raym. 486; *Wilkes v. Hungerford Market Co.* 2 Bing. N. C. 281; *Goldthorpe v. Hardman,* 13 Mees. & W. 377; 16 Am. & Eng. Ency. of Law, 971 *et seq.* Such right of action at common law has not been taken away by the English statutes. *Beckett v. Midland R. Co.* L. R. 3 C. P. 82; *McCarthy v. Metropolitan Board,* L. R. 8 C. P. 191, affirmed L. R. 7 H. L. 243; *Fritz v. Hobson,* 14 Ch. Div. 542; *Truman v. L., B. & S. C. R. Co.* 29 Ch. Div. 89; *Caledonian R. Co. v. Walker's Trustees,* 7 App. Cas. 259; *Rapier v. London T. Co.* [1893] 2 Ch. 588. Some of these cases are quite analogous to the case at bar. Thus in *Fritz v. Hobson,* 14 Ch. Div. 542, it was expressly held that, "when the private

right of the owner of a house adjoining a highway to access from his house to the highway is interfered with by an unreasonable use of the highway, he is entitled to recover damages from the wrongdoer, in respect of loss of custom in the business which he carries on in his house." Our statute is confirmatory of the common law, and declares, in effect, that the circuit courts shall have jurisdiction of actions to recover damages for and to abate a public nuisance from which any person suffers a private or special injury peculiar to himself, so far as necessary to protect the rights of such person, and to grant injunctions to prevent the same. R. S. sec. 3180.

According to the complaint, the defendant has had no authority, as against the plaintiff, to obstruct the street in front of his premises, except under and by virtue of the instrument in writing whereby there was granted to the defendant's predecessor " the right to construct, maintain, and operate its railroad " in the street, " in front of said lot, . . . *as the same was at the date of said instrument constructed.*" Of course, this grant gave to the defendant's predecessor, and so to the defendant, all the rights which are thereby necessarily implied. But manifestly it gave to neither the right to destroy the street as a public highway in front of the plaintiff's lot. The statutes only authorized such construction and maintenance of such railroad in the street on condition that the company should restore the highway " to its former state, or to such condition as that its usefulness " should " not be materially impaired, and thereafter maintain the same in such condition against any effects in any manner produced by such railroad." R. S. sec. 1828, subd. 5, and sec. 1836. It has repeatedly been held that such duty is enforceable by the courts. *Jamestown v. C., B. & N. R. Co.* 69 Wis. 648; *Oshkosh v. M. & L. W. R. Co.* 74 Wis. 534; *State ex rel. Grady v. C., M. & N. R. Co.* 79 Wis. 259. Thus, it appears that the obstruction and inter-

ference with the street complained of, were not authorized by statute. The case, therefore, is clearly distinguishable from that class of cases where the incidental injury complained of is the necessary result of an authorized taking of land and the proper and authorized use of the same.

"A railroad company cannot monopolize a street, in derogation of the public and private use to which it has been applied." *Janesville v. M. & M. R. Co.* 7 Wis. 484. In *Farrand v. C. & N. W. R. Co.* 21 Wis. 439, Dɪxon, C. J., said: "The company has no right to appropriate the whole or any part of the street to its own exclusive use, as for side tracks, switches, engine houses, depot buildings, and the like, and so destroy the public right of way." In *Penn. R. Co. v. Angel,* 41 N. J. Eq. 316, it was held that "a railroad company using, for the purposes of a terminal yard, a portion of a street over which it has only a right of way, is responsible for any nuisance, public or private, thereby created." The same rule was applied in the same state, where, as here, the railway company acquired the right to lay its track in a public street by grant. *Thompson v. Penn. R. Co.* 45 N. J. Eq. 870. In *Baltimore & P. R. Co. v. Fifth Baptist Church,* 108 U. S. 329, Mr. Justice Fɪeld, speaking for the court, said: "The engine house and repair shop of the railroad company, as they were used, rendered it impossible for the plaintiff to occupy its building with any comfort as a place of public worship. . . . Plainly, the engine house and repair shop, as they were used by the railroad company, were a nuisance in every sense of the term. . . . For such annoyance and discomfort the courts of law will afford redress by giving damages against the wrongdoer, and when the cause of the annoyance and discomfort are continuous courts of equity will interfere and restrain the nuisance." *S. C.* 137 U. S. 568. See, also, *New York El. R. Co. v. Fifth Nat. Bank,* 135 U. S. 432. In *Truman v. L., B. & S. C. R. Co.* 29 Ch. Div. 89, the

Bourgeois vs. Northwestern National Ins. Co.

railway company, under the authority of an act of Parliament, purchased a piece of land adjoining one of its stations, and used it as a cattle dock; and yet it was held that the act gave the company no authority to create a nuisance to occupiers of houses near the cattle dock by herding cattle therein. So, in *Rapier v. London T. Co.* [1893] 2 Ch. 588, it was "held that, although horses were necessary for the working of the tramways, the company were not justified by their statutory powers in using the stables so as to be a nuisance to their neighbors, and that it was no sufficient defense to say that they had taken all reasonable care to prevent it."

The obstruction of the passage to and egress from the warehouse and elevator in question by means of a permanent embankment, the storing of cars, and other mere depot uses, is not only in contravention of the express terms of the grant, but also of the mandate of the statute cited. Upon authority and reason, we must hold that the complaint states a good cause of action.

*By the Court.*— The order of the circuit court is affirmed.