RANSOM, Appellant, v. PINGEL et al., Respondents.

(No. 7,602.)

(Submitted January 12, 1937. Decided February 15, 1937.)

[65 Pac. (2d) 616.]

*Mr. D. W. Doyle* and *Mr. E. K. Cheadle,* for Appellant, submitted an original and a reply brief; *Mr. Doyle* argued the cause orally.

*Messrs. Speer & Hoffman,* and *Mr. W. M. Black,* for Respondents, submitted a brief; *Mr. Harvey B. Hoffman* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is a taxpayer's action to restrain the defendants from installing and maintaining a tract index in the office of the county clerk of Toole county. The cause was tried to the court sitting without a jury, Honorable John Hurly, judge presiding. The court denied the relief sought, and this appeal followed.

The evidence, admissions in the pleadings or stipulations at the trial disclose the following facts: The county clerk already maintains the indexes required by section 4799, Revised Codes. The county commissioners deemed it advantageous to the county and to the best interests of the people of the county to install and maintain a tract index. This, in their judg-

ment, was advisable in order to facilitate the matter of making application for tax deeds, and to eliminate the necessity of employing a licensed abstracter to furnish the necessary information. The record shows that in Toole county, because of activity in the oil industry, the county clerk has found it necessary to give notice to as many as 175 to 200 persons for a single tax deed. From 1929 to 1933, the county made 1,360 applications for tax deeds, covering 97,600 acres of land in the rural sections, and 430 applications for Shelby property, and 474 applications for other town properties. Taxes for 1934 are delinquent on about eight or nine hundred parcels. The cost of supplies and equipment needed for installing the tract index would be approximately $3,000. The cost of maintenance after the installation was estimated at $30 a month. Through the W. P. A., the cost of labor for installing the index was to be paid by the federal government, but the cost of the materials and of maintenance must be borne by the county.

The only question presented is whether the county commissioners have authority to expend public funds for this project.

Some courts have held that the county commissioners may not expend county funds for a tract index. (*Smith* v. *Lamping,* 27 Wash. 624, 68 Pac. 195; *Dirks* v. *Collin,* 37 Wash. 620, 79 Pac. 1112; *Reilly* v. *Board of County Commrs.,* 29 Idaho, 212, 158 Pac. 322.) Defendants contend that the right of the county commissioners to install the tract index springs from their implied powers. They contend that, since the county must make application for tax deeds and must serve notice on interested parties, the county commissioners may provide a reasonable means of obtaining the information as to who are interested parties inasmuch as the indexes provided for by section 4799, supra, are not adequate to furnish the information. They rely in the main upon the case of *Arnold* v. *Custer County,* 83 Mont. 130, 269 Pac. 396, 402, where this court held that it was competent for the county commissioners to contract with an abstracter to furnish the necessary information. The court in that case said: "When the statutes require an act to

be done by a county official or county officials and do not provide a method of doing it, any reasonable and suitable means may be adopted." Many cases are cited and quoted from in the *Arnold Case* supporting the court's conclusion and will not be repeated here. In that case this court referred to the statutes, now sections 2209, 2209.1, and 2212, Revised Codes of 1935, making it the duty of the county clerk to give notice of application for a tax deed to certain parties. It then referred to the statutes conferring powers upon the county commissioners, being now sections 4465 to 4465.29, and concluded that the county commissioners had the implied power to contract with an abstracter to furnish the requisite information to enable the county to give notices to the proper persons on application for tax deeds. This case supports the conclusion contended for by defendants.

If the county commissioners have the right to make a contract to obtain this information, we see no reason why they may not in their discretion, under facts such as those here involved, install a tract index as a convenient, safe, and reliable means of procuring and having available at all times the necessary information in the office of the county clerk to enable him to perform his duties with respect to tax deeds. It is well settled in this state that where the statute confers a power, but the mode of its exercise is not prescribed, any appropriate means of carrying it out may be adopted. (*Morse* v. *Granite County,* 44 Mont. 78, 119 Pac. 286; *Fisher* v. *Stillwater County,* 81 Mont. 31, 261 Pac. 607; *State ex rel. Blair* v. *Kuhr,* 86 Mont. 377, 283 Pac. 758; *Simpson* v. *Silver Bow County,* 87 Mont. 83, 285 Pac. 195.) In the *Arnold Case,* supra, it was said: " 'Unless prohibited by law, a county board may adopt such means as in its judgment shall be expedient in assisting county officers properly to discharge the duties of their offices.' (15 C. J. 459.) "

The question presented here is analogous to that of employing a tax ferret. The rule is quite general that if the duty to search out omitted property for tax purposes is not

imposed upon some official, the county commissioners may, under their general power over county affairs, employ a tax ferret. The cases supporting this conclusion are listed in the note in 11 A. L. R. 916, and this court has upheld the right of county commissioners to do so in *Simpson* v. *Silver Bow County*, supra.

The case of *Hoffman* v. *Board of Commissioners of Lake County*, 96 Ind. 84, while not directly in point here, tends to support the action of the commissioners. In that case the court said: ''Whether the index contracted for was such as was needed, or was the best for the county, was solely for the judgment of the board of commissioners, and if the board had authority to act at all, the judgment reached by it can not be reviewed by the courts. (*Board of Commrs. of Hamilton County* v. *Cottingham*, 56 Ind. 559; *English* v. *Smock*, 34 Ind. 115, 7 Am. Rep. 215.) If the law provides that a definite thing shall be contracted for, and prescribes the mode of contracting, then no discretion is vested in the county or municipal officers, and they must conform to the requirements of the law, but there are no such statutory provisions applicable to this case. * * * The statute vests in the county commissioners very comprehensive powers over the business, property and affairs of the county. The Constitution provides that county commissioners may be invested with local administrative powers, and the statute invests them with authority over county property, business and affairs. (R. S. 1881, sections 160 and 5745.) * * * It may be true that the county has no absolute property in the public records, but certainly the officers to whom, by the Constitution and the statute, local administrative powers are granted, must have authority to preserve these records, and keep them in such condition as shall make them subserve the purposes for which they were intended. * * * It is of great importance that indexes should be prepared with care, so that the work of examining for judgment liens may be conducted without danger of overlooking judgments or falling into errors. It should be held

that securing an accurate index is a just exercise of the powers with which the commissioners are invested, for the power is exercised upon a subject in which the public interests of the county are involved, and is connected with the affairs and property of the county. In exercising such a power, the commissioners do not travel beyond the scope of their general duties, nor do they transcend their powers."

The case of *Thomas* v. *Board of Supervisors of Wayne County*, 214 Mich. 72, 182 N. W. 417, under statutes similar though somewhat different from ours, sustained the right of the county to install a tract index.

In the case of *State ex rel. Freeman* v. *Abstracters Board of Examiners*, 99 Mont. 564, 45 Pac. (2d) 668, 673, this court made this statement: "The clerk, in his official capacity, could not comply with the provisions of this Act, as he is without authority to prepare or maintain at public expense any other 'indices' than those which he is by law directed to keep. (*Smith* v. *Lamping*, 27 Wash. 624, 68 Pac. 195.)" This statement was correct so far as the county clerk is concerned, but does not reach the question whether the county commissioners who have supervisory powers over county officers and are the executive heads of the county may require the county clerk to install such an index.

The correct conclusion was reached in the case of *State ex rel. Freeman* v. *Abstracters Board of Examiners*, supra, and the two Washington cases are there cited with approval so far as they hold that the county clerk has no authority to install a tract index. However, we cannot approve of those cases and the Idaho case, supra, so far as they deny the right of the county commissioners to install such an index. This result does not affect the conclusion in the case of *State ex rel. Freeman* v. *Abstracters Board of Examiners*, supra, on the question of discrimination, since the county clerk, even with a tract index, does not and cannot become a public abstracter.

It follows that the county commissioners were acting within the sphere of their implied powers in taking steps to install a

tract index under the facts here shown bearing upon the necessity therefor in the county of Toole. The district court properly denied the restraining order and the judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART and ANDERSON concur.

MR. JUSTICE MORRIS: I dissent. This is merely another instance of that inclination of the average public official to hunt out some additional method of adding to the ever-increasing burdens of government by an unwarranted exercise of implied powers.

The majority justifies its opinion on the ground that the county commissioners are required to provide abstracts of title to lands acquired by the county by tax deeds, and that when a duty is imposed upon a public official and no mode is prescribed, the public official or board may provide the mode at discretion. This power has been recognized heretofore to a limited extent, but if it is to have unlimited sway, the same assumption of power as is here stamped with the approval of this court—not an express legislative power but one assumed under that indefinite claim to "powers necessarily implied—" then, under the same claim to implied powers, county boards and other public functionaries may set up printing plants, make the books and stationery they are required to furnish the various offices, and, under the same claim of power, newspapers might be published by reason of the necessity of giving notice of public acts, and so on *ad infinitum.*

The functions of government that most vitally affect the individual are those which involve the lives and liberties of individuals, and the power to tax to sustain government. These are governmental functions that are essentially legislative, and when any departure is made from practices and principles that have maintained for generations, such departure should not receive recognition by the courts until authorized by the sovereign power, the legislative branch. Removing restrictions

upon executive powers of executive officials, restrictions that have theretofore maintained, by decisions of courts, is conclusive evidence of the courts' impatience with legislative tardiness.

The case of *Arnold* v. *Custer County*, cited by the majority, was, in my opinion, a clear and palpable encroachment upon the powers of the legislative function. Surely, no injury can arise in any county by the continuation of a practice that has been in vogue since the organization of the state government, if we await the action of the legislative branch; and when courts assume to enlarge the powers of any official or board, over and above what has been within their powers heretofore exercised, the power of the court to do so should be clear and unmistakable.

Rehearing denied March 10, 1937.